UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH L. CAMERON, | ) | No. ED CV 15-1660-PLA |
| Plaintiff, | ) | **MEMORANDUM OPINION AND ORDER** |
| v. | ) | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) | |
| Defendant. | ) | |

I.

**PROCEEDINGS**

Plaintiff filed this action on August 18, 2015, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits ("DIB").  The parties filed Consents to proceed before the undersigned Magistrate Judge on September 10, 2015, and September 11, 2015. Pursuant to the Court's Order, the parties filed a Joint Stipulation on April 1, 2016, that addresses their positions concerning the disputed issue in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on August 30, 1957.  [Administrative Record ("AR") at 127.]  He has past relevant work experience as a CAD designer/drafter.  [AR at 22, 37.]

On August 20, 2012, plaintiff protectively filed an application for a period of disability and DIB, alleging that he has been unable to work since November 20, 2008.  [AR at 14, 127-34.]  After his application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ").  [AR at 14, 79-80.]  A hearing was held on January 22, 2014, at which time plaintiff appeared represented by an attorney, and testified on his own behalf.  [AR at 27-41.]  A vocational expert ("VE") also testified.  [AR at 36-39.]  On February 13, 2014, the ALJ issued a decision concluding that plaintiff was not under a disability from November 20, 2008, the alleged onset date, through February 13, 2014, the date of the decision. [AR at 14-23.]  Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 10.]  When the Appeals Council denied plaintiff's request for review on June 22, 2015 [AR at 1-6], the ALJ's decision became the final decision of the Commissioner.  See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted).  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same).  When determining whether substantial evidence exists to support the Commissioner's

decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. <u>Mayes v. Massanari</u>, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); <u>see</u> <u>Ryan v. Comm'r of Soc. Sec.</u>, 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted).  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." <u>Ryan</u>, 528 F.3d at 1198 (citation and internal quotation marks omitted); <u>see</u> <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir. 1992).

## A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995), <u>as</u> <u>amended</u> April 9, 1996.  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  <u>Id.</u>  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  <u>Id.</u>

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since November 20, 2008, the alleged onset date.[1] [AR at 16.] At step two, the ALJ concluded that plaintiff has the severe impairments of gunshot wound to the left shoulder; complex regional pain syndrome; and degenerative disc disease of the cervical spine. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [AR at 18.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform light work as defined in 20

---

[1]     The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2014. [AR at 16.]

[2]     RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which
(continued...)

C.F.R. § 404.1567(b),[3] as follows:

> [C]an lift and/or carry 20 pounds occasionally and 10 pounds frequently; he can sit for six hours in an eight-hour workday with customary breaks; he can stand and/or walk for six hours in an eight-hour workday with customary breaks; he can push and/or pull within the weight limits indicated for lifting and/or carrying, except he can occasionally push and/or pull with the left upper extremity; he is precluded from climbing ladders, ropes or scaffolds; he can occasionally reach in front and laterally with his left upper extremity; he can occasionally reach overhead with his bilateral upper extremities; he has no limitations in handling or fingering with bilateral upper extremities; and he must avoid concentrated exposure to moving machinery, and dangerous and unprotected heights due to the side effects of his medications.

[Id.]  At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to perform his past relevant work as a CAD designer/drafter.  [AR at 22.]  Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of November 20, 2008, through February 13, 2014, the date of the decision.  [AR at 23.]

## V.

## THE ALJ'S DECISION

### A.   PLAINTIFF'S CONTENTION

Plaintiff contends that the ALJ erred when he found that plaintiff could perform his past relevant work, given the reaching limitations found in the RFC assessment and the hypothetical question posed to the VE at the hearing.  [Joint Stipulation ("JS") at 4.]  Specifically, plaintiff argues that his RFC limitations to occasional reaching in front and laterally with his left arm, and

---

[2](...continued)
the ALJ assesses the claimant's residual functional capacity."  Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[3]   "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567(b).

1  occasional reaching overhead with both arms,[4] precludes him from performing his past relevant

2  work as a CAD designer/drafter, which, as identified by the VE, requires frequent reaching.  [Id.]

3       As set forth below, the Court agrees with plaintiff and remands for further proceedings.

4

5  **B.    STEP FOUR DETERMINATION**

6       Plaintiff's RFC limits him to occasional reaching in front and laterally with his left upper

7  extremity, and to occasional reaching overhead with both extremities, and the ALJ's hypothetical

8  to the VE included these limitations.  [AR at 22, 37-38 ("reaching with the left upper extremity in

9  front and laterally is occasionally, and bilateral upper extremities overhead is occasional").]

10  Plaintiff observes that the Dictionary of Occupational Titles ("DOT") describes the physical

11  demands for the occupation of CAD designer/drafter as requiring frequent reaching.  [JS at 4, Ex.

12  A; DOT No. 007.281-010.]  Reaching is described by the Agency as "extending the hands and

13  arms *in any direction.*"  Soc. Sec. Ruling ("SSR")[5] 85-15 (emphasis added).  Because the DOT job

14  description for plaintiff's past relevant work does not distinguish between any kind of reaching

15  (front, lateral, or overhead), or between right and left arm/hand reaching, plaintiff argues that the

16  reaching requirement for this position exceeds his functional limitations and, because the ALJ

17  _____

18  ⁴   Although plaintiff's arguments primarily focus on the RFC limitation to occasional reaching front,
   laterally, and overhead with his left arm [see, e.g., JS at 5 ("it would be impossible for [plaintiff] to

19  perform the occupation of CAD designer/drafter with one upper extremity limited to reaching no more
   than occasionally . . . [and] [t]here is simply no way that an individual can perform these various tasks

20  with *one* upper extremity limited to only occasional reaching in front") (emphasis added)], he arguably
   touches on the fact that he was also limited to occasional overhead reaching *bilaterally* [see, e.g., id.

21  ("How is it possible that an individual limited to no more than occasional reaching both in front, laterally,
   and overhead would be capable of performing the occupation of CAD designer/drafter as described

22  in the [DOT] which clearly states that such an occupation requires frequent reaching?").]  In fact,
   neither party explicitly acknowledges the impact of the occasional overhead bilateral reaching limitation

23  and, as discussed in more detail herein, defendant completely misstates plaintiff's assessed limitation
   in this regard.

24

25  ⁵   "The Commissioner issues [SSRs] to clarify the Act's implementing regulations and the
   agency's policies.  SSRs are binding on all components of the [Social Security Administration].

26  SSRs do not have the force of law.  However, because they represent the Commissioner's
   interpretation of the agency's regulations, we give them some deference.  We will not defer to

27  SSRs if they are inconsistent with the statute or regulations."  Holohan v. Massanari, 246 F.3d

28  1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

1  failed to identify and obtain a reasonable explanation from the VE regarding this deviation from

2  the DOT, reversal is warranted.  [JS at 4-6.]

3      Defendant contends that plaintiff's RFC "is not an all inclusive restriction for occasional

4  reaching," and plaintiff "would not be precluded from performing jobs with his right arm that

5  regularly require frequent or even constant reaching in *all* directions, and merely precludes Plaintiff

6  from performing jobs that might *regularly require* pushing and pulling, lateral, front or overhead

7  reaching with the left arm." [JS at 7 (first emphasis added).]  Defendant ignores, however, the fact

8  that the ALJ also limited plaintiff to occasional overhead reaching with *both* arms, which may

9  preclude plaintiff from performing jobs -- such as the one in question -- that require frequent

10  reaching.

11      Defendant notes that although reaching is defined as extending the hands and arms in any

12  direction, the DOT does not require that reaching or handling be done bilaterally.  [Id.]  Defendant

13  argues that the reaching restriction in plaintiff's use of his left arm "encompasses a small subset

14  of the 'reaching world,' and of that subset, *only affects the use of the left arm* -- an even smaller

15  subset." [JS at 8 (emphasis added).]  However, defendant's description of plaintiff's left arm RFC

16  reaching limitation as a "small subset of the 'reaching world'" is not accurate, as plaintiff's use of

17  his left arm for reaching is limited to "occasional" in *all* directions -- front, lateral, and overhead --

18  which, for all intents and purposes, is the entire "reaching world."  Additionally, according to

19  defendant, "Plaintiff's remaining abilities for *full use of his right arm for all reaching activities* and

20  the occasional use of his left arm[] for pushing and pulling, front, lateral and overhead reaching,

21  leaves most reaching activities intact."  [JS at 10 (emphasis added).]  Again, this argument fails

22  to account for the fact that plaintiff has the additional RFC limitation to only occasional overhead

23  reaching with *both* arms.

24      Defendant further argues that a review of the narrative description for the CAD designer

25  job "does not describe any activities that might require bilateral use of the arms for pushing and

26  pulling, lateral, front or overhead reaching, let alone require such activities on more than an

27

28

occasional basis."[6]  [Id. (citations omitted).]  Defendant contends that where overhead work is required, the DOT job description specifically describes that work and, therefore, the "specificity in these job descriptions further supports the argument that the CAD designer/drafter job does not conflict" with plaintiff's RFC reaching limitations.  [JS at 11 (citation omitted).]  For instance, defendant notes that one district court observed that the DOT description for the job of "flour blender helper" requires a worker to adjust openings of *overhead* storage bins; the job of "gembreler" involves removing items from an *overhead* conveyor; and the job of "rigger" includes attaching pulley and blocks to fixed *overhead* structures.  [Id. (citing Gonzales v. Colvin, 2013 WL 3199656, at *3 (D. Or. June 19, 2013)).]  However, while these occupations specifically mention the word "overhead" in describing the *location* for the tasks involved, none of them specifically states that overhead *reaching* is required to perform the task -- in fact, the described task might be performed from a ladder or scaffold, or be performed while positioned on the conveyor, or require that the pulley and blocks be fixed to the top or sides of the otherwise "overhead" structure.

Moreover, including specific postural terms within job descriptions is not necessarily the "norm" in the DOT, even for occupations that require frequent reaching.  For instance, the occupation of "Fruit Picker" -- which requires "frequent" reaching, and would logically seem to require reaching in all directions, including overhead -- *never* mentions either the word "overhead" or "reaching" in its description:

> Harvests fruits and nuts, such as cherries, strawberries, grapes, oranges, and pecans, according to method appropriate for type of fruit, by hand or using tools, such as shears, rubber mallet, pronged scoop, or hooked pole: Carries and positions work aids, such as ladders, canvas drop cloths, and buckets.  Selects fruit to be harvested, according to size, shape, and color.  Grasps, twists, and pulls fruit, snips stems, and shakes trees and vines to separate crop from plant and places fruit into

---

[6]  While this argument has some logical surface appeal, the plain meaning of "reaching" includes extending hands and arms in any direction, including overhead reaching. See SSR 85-15.  Thus, the VE's testimony that the hypothetical individual could perform plaintiff's past relevant work, implies that despite his reaching limitations plaintiff is capable of performing a job that requires frequent reaching in all directions with either arm, including overhead.  Under the circumstances herein, the Court cannot confidently conclude that the ALJ's failure to determine whether the VE's testimony was consistent with the DOT and/or to provide an explanation for any deviation was harmless error.

bags, buckets, or trays, exercising care to avoid plant and fruit damage.  Empties filled containers into collection boxes and bins.  May stand on ladders or elevated platforms, stoop over plants, or crawl along rows to reach fruit.  May measure fruit, using gauges.  May pour fruit through screens when removing foreign matter, such as twigs and grasses.  May position hand held vibrating device against branches of bushes to shake ripe fruit from branches.  May dump fruit from containers onto conveyors or load containers onto trucks or wagons.  May remove ladders, debris, boxes, and discarded fruit from fields and bogs to clean growing areas.  May collect fallen nuts into piles, using rake.  May carry and position irrigation pipes.  May be identified with tasks being performed, such as rhubarb trimming, cranberry screening, and walnut knocking.

DOT No. 403.687-018.

Furthermore, simply because the physical demands for a DOT occupation require some degree of climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, feeling, talking, hearing, tasting/smelling, or even lifting, does not necessarily mean that each such term will be included in the DOT's narrative description for that occupation, or that the absence of that term means that the postural activity is not required for a described task.  For instance, according to the DOT and its companion publication, the Selected Characteristics of Occupations, the physical demands required for the "Fruit Picker" occupation described above include frequent climbing, balancing, stooping, reaching, and handling, and occasional kneeling, crouching, and fingering, yet only the words "stoop" and "reach" occur in the DOT's narrative description for that occupation (DOT No. 403.687-018 ("May . . . *stoop* over plants, or crawl along rows to *reach* fruit"[7]) (emphasis added)); standing on a ladder is mentioned in the description but climbing a ladder is not (DOT No. 403.687-018 ("May stand on ladders or elevated platforms")); and crawling, a postural activity that is deemed to be "not present," *is* included in the description of the occupation.  DOT No. 403.687-018 ("May . . . *crawl* along rows to reach fruit.") (emphasis added).  In short, defendant's argument that the DOT job description for any given position will include the word "overhead" if it includes activities that involve that sort of reaching, or will indicate that any other form of "reaching" is required, or will indicate whether reaching with both hands or arms is required in performing the activities, is not persuasive.

---

[7]    The word "reach" in this context does not necessarily refer to extending the *hands* and *arms* to pick the fruit -- it may merely provide that the individual needs to get near enough to the fruit to pick it and that he may have to do that by crawling.

In determining whether appropriate jobs exist for a claimant, or whether the claimant can perform his past relevant work, the VE generally will refer to the DOT.  See Light v. Social Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997).  SSR 00-4p explicitly requires that the ALJ determine whether the VE's testimony deviates from the DOT, and whether there is a reasonable explanation for any deviation.  See SSR 00-4p (stating that an ALJ must inquire whether a VE's testimony regarding "the requirements of a job or occupation" conflicts with the DOT).  The procedural requirements of SSR 00-4p ensure that the record is clear as to why an ALJ relied on a VE's testimony, particularly in cases where the expert's testimony conflicts with the DOT.  In making disability determinations, the ALJ may rely on VE testimony that contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation.  Light, 119 F.3d at 793; Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995); Massachi, 486 F.3d at 1153. Although evidence provided by a VE "generally should be consistent" with the DOT, "[n]either the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict."  SSR 00-4p.  Thus, the ALJ must first determine whether a conflict exists, and if it does, he must then determine whether the VE's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT.  Id.

Only after determining whether the VE has deviated from the DOT, and whether any deviation is reasonable, can an ALJ properly rely on the VE's testimony as substantial evidence to support a disability determination.  Massachi, 486 F.3d at 1152-54.  Evidence sufficient to support a deviation from the DOT may be either specific findings of fact regarding a claimant's ability to perform particular jobs, or inferences drawn from the context of the expert's testimony.  See Light, 119 F.3d at 1435 n.7 (ALJ provided sufficient support for deviation by noting that the VE described characteristics and requirements of jobs in the local area consistent with claimant's RFC); Terry v. Sullivan, 903 F.2d 1273, 1279 (9th Cir. 1990) (ALJ may infer support for deviation where VE's understanding of applicable legal standards is clear from context).  Unless the VE's testimony actually conflicts with the DOT, by itself the ALJ's failure to explicitly ask whether the VE's testimony was consistent with the DOT is not enough to warrant reversal.  Massachi, 486 F.3d at 1151 n. 19, 1152-53 (failure to ask whether the VE's testimony is consistent with the DOT

is harmless procedural error where there is no actual conflict, or the VE has provided sufficient support for his conclusion so as to justify any potential conflicts).

Here, as discussed above, plaintiff's past relevant work as identified by the VE is defined by the DOT as requiring "frequent" reaching, which potentially conflicts with plaintiff's limitation to only occasional front and lateral reaching with his left upper extremity, and which actually conflicts with plaintiff's limitation to only occasional overhead reaching with *both* upper extremities.  See Carpenter v. Colvin, 2014 WL 4795037, at *8 (E.D. Cal. Sept. 25, 2014); see also Kemp ex rel. Kemp v. Colvin, 743 F.3d 630, 633 (8th Cir. 2014).  At a minimum, therefore, there is a *potential* conflict between the VE's testimony about plaintiff's ability to perform his past relevant work and the DOT description of that job, and an explanation of that deviation is necessary.  Carpenter, 2014 WL 4795037, at *8 (testimony that a claimant limited to occasional overhead reaching can nonetheless perform frequent reaching is the type of deviation that should be resolved by explanation from the VE) (citing Winder v. Astrue, 2013 WL 489611, at *2 (C.D. Cal. Feb. 6, 2013) (same)); Richardson v. Astrue, 2012 WL 1425130, at *4 (C.D. Cal. Apr. 25, 2012) (reaching in "any" direction plainly encompasses overhead reaching, therefore VE's testimony deviated from DOT and the ALJ was required to obtain "persuasive evidence" to explain the deviation).  In this case, before the VE testified, the ALJ instructed the VE to "[p]lease make sure your testimony is consistent with the [DOT].  If you disagree with the DOT, please tell me."  [AR at 37.]  However, in responding to the ALJ's hypotheticals, the VE never indicated that he "disagreed" with the DOT, and in his decision the ALJ simply determined, without explanation for the inherent reaching conflict, that "the vocational expert's testimony is consistent with the information contained in the DOT."  [AR at 23.]

Absent a determination that the VE's explanation for the conflict was reasonable and provided a basis for relying on the VE's conclusions rather than on the DOT -- and defendant has pointed to no persuasive evidence in the record to explain this deviation -- an ALJ cannot properly rely on the VE's testimony as substantial evidence to support a disability determination.  Massachi, 486 F.3d at 1152-54; SSR 00-4p.  Here, the ALJ relied on VE testimony that conflicted with the DOT, and the ALJ was therefore required to explain the deviation by making either specific factual

findings or drawing inferences from the context of the VE's testimony. See Light, 119 F.3d at 793. He did not do so.  Instead, the record contains only the VE's conclusion that plaintiff can perform work requiring "frequent reaching" despite an RFC limiting him to occasional reaching in all directions with his left upper extremity, and to occasional overhead reaching with both upper extremities, and the ALJ's unsupported determination that the VE's testimony did not conflict with the DOT despite this job requirement and plaintiff's RFC reaching limitations.  "Where an ALJ fails to obtain an explanation for and resolve an apparent conflict -- even where the VE did not identify the conflict -- the ALJ errs."  Richardson, 2012 WL 1425130, at * 5.  Remand is required to obtain further VE testimony to resolve the inconsistency with the DOT.  Massachi, 486 F.3d at 1155.


## VI.

### REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  See Lingenfelter v. Astrue, 504 F.3d 1028, 1041 (9th Cir. 2007); Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004).  Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate.  See Benecke, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made.  In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, the ALJ shall determine at step four, with the assistance of a VE, if necessary, whether, given the ALJ's RFC assessment, including plaintiff's limitations to occasional reaching with his left upper extremity, and occasional overhead reaching with both upper extremities,

plaintiff is capable of performing his past relevant work as a CAD designer/drafter.[8]  If the ALJ determines that plaintiff is capable of performing his past relevant work, then the ALJ must also determine, with the assistance of a VE, whether there is a reasonable explanation for the inconsistency between plaintiff's assessed reaching limitations and the DOT job description for the CAD designer/drafter occupation, which requires frequent reaching.  If, on the other hand, the ALJ finds that plaintiff is not capable of performing his past relevant work as a CAD designer/drafter in light of his RFC limitations, then the ALJ should proceed to step five and determine, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform.

**VII.**

**CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:  April 6, 2016

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[8]     Nothing in this decision is intended to disturb the ALJ's RFC assessment or his step four finding that plaintiff's past relevant work was as a CAD designer/drafter, DOT No. 007.281-010.